IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION NO. |
| CHOAT SOVIRAVONG, | 1:19-cr-146-AT-CMS |
| Defendant. | |

## REPORT AND RECOMMENDATION

This matter is before the Court on two motions filed by the defendant in this case: Motion for Joinder [Doc. 14] and Motion to Suppress Seized Electronic Equipment and Emails (the "Motion to Suppress") [Doc. 23]. For the reasons that follow, I recommend that both motions be denied.

On April 16, 2019, a federal grand jury in the Northern District of Georgia returned a four-count indictment against Defendant Choat Soviravong ("Defendant") alleging that on June 24, 2014, he made four false statements during an interview with agents from the Food and Drug Administration ("FDA") and the Internal Revenue Service ("IRS"), in violation of 18 U.S.C. § 1001(a)(2). [Doc. 1]. According to the indictment, the statements allegedly concerned the design and preparation of certain documents related to the regulation of dietary supplements, "GMP certificates" and "Certificates of Free Sale." [Id.].

The instant case is related to another case pending in this district against Jared Wheat, John Brandon Schopp, and Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), United States v. Wheat, et al., No. 17-cr-229-AT-CMS (the "Wheat case"). The eighteen-count indictment in the Wheat case alleges four distinct conspiracies over a six-year time span. The indictment in the Wheat case also alleges substantive counts for wire fraud, money laundering, introduction of misbranded drugs into interstate commerce, and the manufacture and distribution of controlled substances. Defendant, a long-time graphic designer at Hi-Tech, is not charged in the Wheat case, but apparently is an unindicted co-conspirator in connection with the wire fraud offenses alleged in that case.

## I.     MOTION FOR JOINDER

In his single-page motion for joinder, Defendant asks to have his case tried jointly with the Wheat case, pursuant to Federal Rule of Criminal Procedure 8. [Doc. 14 at 1]. He argues, with no citation to caselaw and only a passing reference to the rule, that there should be a single trial because the two cases involve many of the same facts, issues, witnesses, and exhibits. [Id.]. The Government responds that because Defendant has not argued or shown that he is charged with participating in the same series of acts or transactions as the defendants in the Wheat case, joinder would not be proper. [Doc. 21]. Defendant did not file a reply brief.

This is an unusual motion. Typically, the issue of Rule 8 joinder is raised by a defendant seeking to sever his case from that of his co-defendants. In those circumstances, the Court is tasked with determining whether the Government has properly joined the cases together. Here, on the other hand, the Government has elected to charge Defendant separately from those charged in the <u>Wheat</u> case, and Defendant seeks to compel the Government to try the two cases at the same time. The absence of legal authority for this particular request is telling.

As noted above, Defendant cites only generally to Rule 8 of the Federal Rules of Criminal Procedure, which is titled "Joinder of Offenses or Defendants." Subsection (b) addresses joinder of defendants in the same indictment.[1] That subsection provides:

> **(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

---

[1] Defendant does not indicate which portion of Rule 8 he is relying upon, but I have assumed that he is relying upon subsection (b). Subsection (a) of Rule 8 is titled "Joinder of Offenses" and addresses the circumstance when different crimes against a particular defendant may be joined in a single indictment. <u>See</u> FED. R. CRIM. P. 8(a). Defendant has not argued that there is any problem with the four counts in his case being tried together.

FED. R. CRIM. P. 8(b).  Nothing in this rule requires the Government to charge individuals in a single indictment, even if the crimes overlap in some ways.  On the contrary, the rule provides that the Government may charge defendants separately.

The Government argues that joinder (which did not occur) would have been improper because the connection between the various defendants is limited to a few individuals who are alleged to have committed separate acts that involve them in separate offenses with no common aim.  See United States v. Weaver, 905 F.2d 1466, 1477 (11th Cir. 1990).  Under such circumstances, the requisite substantial identity of facts or participants required by the rule is not present.  See id.  Similarly, joinder is not proper "if different facts and circumstances must be established to support the alleged violations."  Id.

I agree with the Government that Defendant has not shown a substantial identity of facts or participants necessary to satisfy Rule 8(b).  The acts that the Government alleges Defendant committed involve wholly separate acts from those charged against the three defendants in the Wheat case.  See United States v. Yearty, No. 1:08CR40-SPM, 2009 WL 1343904, at *1–2 (N.D. Fla. May 8, 2009) (finding misjoinder and ordering separate trials for a defendant charged with false statements and other defendants charged with bribery-related crimes).  Moreover, there is no allegation that the defendants in the Wheat case were aware of Defendant's allegedly

false statements to investigators in 2014 or that there was a plan between Defendant and the defendants in the <u>Wheat</u> case for Defendant to lie. Although it is true that Defendant worked for Hi-Tech and that there may be some overlap in witnesses, Defendant has not shown that he is alleged to have participated in the same acts or transactions as the defendants in the <u>Wheat</u> case. I will not compel the Government to try these cases together in the absence of any legal authority requiring it. I therefore recommend that Defendant's motion for joinder be denied.

## II.   <u>MOTION TO SUPPRESS</u>

In his three-page motion to suppress, Defendant moves to suppress all evidence obtained from the following search warrants, arguing that they were unsupported by probable cause and were overbroad:

- A warrant dated October 23, 2014 authorizing the search of Defendant's yahoo email account (csdesign22@yahoo.com), signed by Alan J. Baverman, a United States Magistrate Judge for the Northern District of Georgia (the "Yahoo Warrant") [Doc. 23-3].

- Six warrants dated September 28, 2017 authorizing the search of six Hi-Tech business locations, signed by Russell G. Vineyard, a United States Magistrate Judge for the Northern District of Georgia (the "Premises Warrants") [Docs. 23-1, 25-1].[2]

---

[2] The six warrants were all supported by the same, single affidavit. Defendant attached only one of the six warrants to his motion, and he failed to attach the affidavit. The Government filed the affidavit in connection with its response brief. [Doc. 25-1].

[Doc. 23].³  In his brief, Defendant does not refer to a single fact in any of the affidavits, and he makes only generalized assertions without any citation to the record or any analysis.  He fails to identify what he believes is lacking in terms of probable cause and does not explain why the warrants might be considered overbroad.  Nevertheless, I have reviewed the affidavits supporting the various warrants with an eye toward the supposed problems that Defendant has identified.

## A.    The Yahoo Warrant

The Yahoo Warrant was supported by an application and affidavit executed on October 23, 2014 by Jacqueline Reynolds, a Special Agent with the criminal investigations section of the IRS.  [Doc. 23-3 ("Reynolds Aff.")].  According to the affidavit, Hi-Tech is a Georgia-based company that manufactures dietary supplements under the Hi-Tech brand name as well as under private label names.  [Id. ¶ 5].  As a manufacturer of dietary supplements, Hi-Tech is required by federal

---

³ In his motion to suppress, Defendant also complained about a warrant dated May 17, 2013 authorizing the search of Jared Wheat's AOL email account (the "AOL Warrant").  [Doc. 23-2].  At the pretrial conference, however, Defendant conceded that he lacks standing to challenge the AOL Warrant.  The Government states in its response brief that it has assumed—for purposes of this motion only and without conceding the point—that Defendant has standing to challenge the Premises Warrants.  [Doc. 25 at 4, n.2].  The Government does not dispute that Defendant has standing to challenge the Yahoo Warrant, which authorized the search of Defendant's own email account.

law to comply with Good Manufacturing Practices ("GMPs"), and some customers of Hi-Tech require proof of Hi-Tech's compliance with GMPs in order to conduct business. [Id. ¶ 6]. Evidence of a firm's compliance with GMPs can be accomplished by providing a document called a GMP Certification, which must be issued by an independent and qualified firm. [Id.].

The affidavit states that in May 2013, federal agents obtained a search warrant for an email account associated with Jared Wheat, the sole officer of Hi-Tech. [Reynolds Aff. ¶ 7]. According to Special Agent Reynolds, the email communications obtained from that search warrant included those sent and/or received by Defendant, through the email address csdesign22@yahoo.com (the "Target Account"), that show that Mr. Wheat may have been directing Defendant to prepare false and fraudulent documents related to Hi-Tech's compliance with GMP regulations. [Id.].

The affidavit provided several specific examples of such communications, including emails tending to show that Defendant, a graphic designer, was preparing false documents regarding Hi-Tech's compliance with GMP regulations by creating false GMP Certification forms [id. ¶ 8] and by fraudulently modifying documents relating to GMP audits [id. ¶¶ 9–12]. According to Special Agent Reynolds, Defendant designed product labels, product boxes, and marketing materials as part

of his job at Hi-Tech, and investigators believed that this experience gave him both the background and expertise to create the false forms and to fraudulently modify documents. [Id. ¶ 13]. Additionally, Defendant apparently admitted to agents that he used the Target Account to conduct business activities for Hi-Tech and to communicate with Jared Wheat for work-related correspondence. [Id. ¶ 14]. Special Agent Reynolds stated that in her opinion, there was probable cause to believe that the Target Account would contain evidence of mail fraud, wire fraud, false statements, and conspiracy. [Id. ¶ 4].

The Yahoo Warrant described the particular things to be seized in two parts. The first part, Section I, is titled "Information to be disclosed by YAHOO." That information included the content of all emails sent from the Target Account and stored in that account, information regarding the identification of the account, other information stored by any individual using the account, and all records pertaining to communications between Yahoo and any person regarding the account. [Doc. 23-3 at 14]. Then, in the second part, the Yahoo Warrant narrowed the information that the Government was authorized to seize, as follows:

## II. Information to be seized by the Government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of mail fraud, wire fraud, false statements, and conspiracy to commit any of the foregoing, including but not limited to the following matters:

> a.     Audit reports, certificates (including GMP certificates), and any other communications, representations or documents concerning Hi-Tech's compliance with FDA rules and regulations.
>
> b.     Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

[Id. at 15].

Probable cause to support a search warrant exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location.  See United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999).  The search warrant affidavit must "state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched."  United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) (citation omitted).  "[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate judge's decision to issue the warrant."  United States v. Bushay, 859 F. Supp. 2d 1335, 1379 (N.D. Ga. 2012) (citing Massachusetts v. Upton, 466 U.S. 727, 728 (1984)).  Finally, courts are not to "interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to

magistrates in their probable cause determinations." Id. (citing United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994)); see also United States v. Robinson, 62 F.3d 1325, 1331 (11th Cir. 1995) (requiring the reviewer to afford "great deference" to a judicial determination of probable cause).

The only specific argument that Defendant makes regarding probable cause is that the Yahoo Warrant was based on stale information, i.e., "emails that appear to be three years old." [Doc. 23 at 2]. The staleness doctrine "requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues." United States v. Bervaldi, 226 F.3d 1256, 1264 (11th Cir. 2000). Whether information is stale is determined "on the peculiar facts of each case." Id. at 1265. However, "there is no mathematical measure for when freshness fades away and staleness sets in." United States v. Lopez, 649 F.3d 1222, 1246 (11th Cir. 2011). When the warrant authorizes the seizure of electronically-stored information, time becomes less significant, because the evidence sought to be seized is not a tangible object easily destroyed or removed. See id. (citing United States v. Hyde, 574 F.2d 856, 865 (5th Cir. 1978)).

Here, the Yahoo Warrant sought emails and other digital information. Courts have recognized that staleness concerns regarding "[d]igital files, particularly those stored with an email service provider, are qualitatively different" from those

concerns associated with the search of real property, where the "supporting information must be timely in order to believe that a fair probability exists for finding particular evidence at a particular place." See United States v. Khateeb, No. 8:14-cr-185-T-23MAP, 2015 WL 6438755, at *4 (M.D. Fla. Oct. 21, 2015) (citing United States v. Bervaldi, 226 F.3d 1256, 1264–65 (11th Cir. 2000)). Accordingly, when seeking authorization to search digital information, the passage of months or even years will not automatically render supporting information in a warrant application "stale" because such evidence can reasonably be stored by email service providers on their servers for an indefinite period of time. See id.

The suspicious emails and attachments from Mr. Wheat's email account that led investigators to Defendant's email account were sent in 2011 and 2012, long before Special Agent Reynolds presented her affidavit to the judge in October 2014. The information was not stale, however, because there existed more than a fair probability that evidence of illegal conduct still remained on the Yahoo servers in 2014 when the Yahoo Warrant was signed. See Khateeb, 2015 WL 6438755, at *4 (rejecting staleness argument for an email search warrant based on conduct that occurred more than two years before the warrant was issued, stating that "two years is hardly relevant in the digital age" given that such information is normally stored on servers indefinitely). Indeed, Special Agent Reynolds stated that in her

experience, unless the email sender or receiver specifically deleted the email from the server, the email messages typically remain on the systems indefinitely. [Reynolds Aff. ¶ 18]. In cases involving digital media, courts have found that much longer periods of time than the affidavits at issue in this case did not render information stale. See, e.g., United States v. McBurnette, 382 F. App'x 813, 815 (11th Cir. 2010) (in pornography context, finding a period of almost two years did not render information stale); United States v. Wang, No. 5:12-cr-00581EJD, 2014 WL 794203, at *6 (N.D. Cal. Feb. 26, 2014) (stating that where the evidence sought is the kind that is preserved for long periods of time, such as email accounts maintained by Google indefinitely on its servers, "staleness is not a problem"). For these reasons, I conclude that the affidavit in support of the Yahoo Warrant provided at least a "fair probability" that evidence of mail fraud, wire fraud, false statements, and conspiracy would be found in the Target Account.

Defendant also states, in a purely conclusory fashion, that the Yahoo Warrant is overbroad. Although he does not mention the United States Constitution, I assume that he is raising a Fourth Amendment challenge. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. Thus, the Fourth Amendment

requires that a warrant particularly describe both (1) the place to be searched and (2) the persons or things to be seized. Id.; United States v. Travers, 233 F.3d 1327, 1329 (11th Cir. 2000) ("A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad."); see also FED. R. CRIM. P. 41(e)(2)(A) (explaining that "the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned").

The Yahoo Warrant's description of the place to be searched—the email account and information associated with it stored at Yahoo's premises—was sufficiently particularized. With regard to the items or information to be seized, the Yahoo Warrant provided for the seizure of information that "constitute[d] fruits, evidence and instrumentalities" of violations of the mail and wire fraud statutes, and conspiracy, including information that related to (a) audit reports, certificates, and any other communications, representations, or documents concerning Hi-Tech's compliance with FDA rules and regulations; and (b) records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts. [Doc. 23-3 at 15]. By explicitly limiting the scope of what may be searched and seized to evidence of the crimes under investigation, the Yahoo Warrant was sufficiently particular to enable the searchers to reasonably

ascertain and identify the documents and information authorized to be seized. <u>See</u> <u>United States v. Lee</u>, No. 1:14-cr-227-TCB-2, 2015 WL 5667102, at *3 (N.D. Ga. Sept. 25, 2015) (concluding that a search warrant similar to the one in this case was sufficiently particular and stating, "a warrant that requires disclosure of the entire contents of an email account and then describes a subset of that information that will be subject to seizure is reasonable"); <u>United States v. Harvey</u>, No. 1:15-cr-53-TWTRGV, 2015 WL 9685908, at *13 (N.D. Ga. Nov. 30, 2015), *report and recommendation adopted by*, 2016 WL 109984, at *1 (N.D. Ga. Jan. 8, 2016) (concluding that a search warrant for a cell phone was sufficiently particularized where the property to be seized was limited to evidence of the crimes being investigated). The Yahoo Warrant, therefore, was not a general warrant because it described with sufficient particularity not only the information to be disclosed from the Target Account, but also the specific evidence that the Government was allowed to seize from within that body of information. <u>See</u> <u>Lee</u>, 2015 WL 5667102, at *10. For the reasons stated, I conclude that the Yahoo Warrant satisfied the Fourth Amendment's particularity requirement.

## B.     The Premises Warrants

The entirety of Defendant's argument in support of his motion to suppress the evidence seized pursuant to the Premises Warrants, is as follows:

> Defendant also objects to the warrant(s) executed at Hi-Tech on
> October 4, 2017 for many of the same reasons enumerated above.
> Again the warrants were non specific, overbroad, and lacking in
> probable cause. The materials seized (essentially every hard drive
> and computer in the business) was seized [sic]."

[Doc. 23 at 2]. I will begin my analysis by reviewing the facts that the agents provided in support of the Premises Warrants to determine whether the warrants were supported by probable cause. Then I will turn to the question of whether the warrants are overbroad.

The six Premises Warrants were all supported by a single application and affidavit executed by Brian Kriplean, a Special Agent with the FDA's Office of Criminal Investigations. In his affidavit, Special Agent Kriplean averred that there was probable cause to believe that Hi-Tech was manufacturing, marketing, and distributing misbranded foods and/or drugs, some of which contain anabolic steroids, which is a Schedule III controlled substance. [Doc. 25-1 ("Kriplean Aff.") ¶ 3]. Special Agent Kriplean explained in his affidavit that the FDA is the federal agency responsible for protecting the health and safety of the American public by enforcing the federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301-399f ("FDCA"). [Id. ¶ 9]. One of the FDA's roles is to ensure that drugs are safe and effective for their intended uses and that drugs and foods bear labeling containing true and accurate information. [Id.]. The FDA's responsibilities under the FDCA

include regulating the manufacturing, labeling, and distribution of all drugs and foods shipped or received in interstate commerce. [Id.].

In his affidavit, Special Agent Kriplean stated that in September 2016, federal law enforcement agents conducted undercover purchases from Hi-Tech of certain products that were marketed for sale as testosterone and prohormone supplements. [Kriplean Aff. ¶¶ 20–21]. He stated that based on his training and experience, he believed that such supplements "often contain non-dietary ingredients or Schedule III controlled substances, namely anabolic steroids." [Id. ¶ 20]. Upon receipt of the products, the law enforcement officers submitted them for chemical analysis to the FDA's Forensic Chemistry Center. [Id. ¶ 22]. According to Special Agent Kriplean, the testing revealed that five of the products—1-AD, 1-Testosterone, Androdiol, Equibolin, and Superdrol—contained Schedule III anabolic steroids, but the labeling did not reflect that the products contained these Schedule III anabolic steroids. [Id. ¶¶ 22–23]. According to Special Agent Kriplean, this false or misleading labeling rendered those products misbranded under the FDCA. [Id.].

Special Agent Kriplean then stated that in early August 2017, he reviewed Hi-Tech's website and confirmed that Hi-Tech offered for sale numerous testosterone and prohormone supplements, including the five products that had previously tested positive for anabolic steroids. [Kriplean Aff. ¶ 20]. At the agent's direction, a

cooperating source emailed a regional sales manager for Hi-Tech, inquiring about Hi-Tech's prohormones. [Id. ¶ 24]. The Hi-Tech employee responded the next day, stating that "all [of Hi-Tech's prohormones] are compliant and DHEA compounds that bypass the liver so they are not toxic." [Id.]. Thereafter, on August 15, 2017, the cooperating source placed an order with the Hi-Tech regional sales manager for five bottles each of the prohormone products that had previously tested positive for anabolic steroids. [Id.].

On August 21, 2017, the cooperating source received the products from Hi-Tech. [Kriplean Aff. ¶ 25]. Special Agent Kriplean thereafter took custody of the still-sealed package, and he reviewed the respective labels of the products received, confirming that they were consistent with the respective label information as the products purchased and received in September 2016, with the only difference being the lot numbers. [Id.]. After the products were delivered, Special Agent Kriplean submitted samples of the products for chemical analysis. [Id. ¶ 26]. The testing revealed that with respect to four of the products—1-AD, Androdiol, Equibolin, and Superdrol—each contained Schedule III anabolic steroids. [Id.]. And, like the earlier-purchased products, the labeling did not list the Schedule III anabolic steroids as ingredients. [Id. ¶ 27].

The six Premises Warrants were all based on the same affidavit, which described the Hi-Tech business locations to be searched, and provided specific facts tying each location to the investigation. [Kriplean Aff. ¶¶ 29–40]. The warrants authorized law enforcement to search the six locations for "[e]vidence, fruits, and instrumentalities of violations of federal law, including 21 U.S.C. § 331 [relating to prohibited acts with respect to adulterated or misbranded food or drugs] and 21 U.S.C. § 841(a)(1) [making it a crime to manufacture, distribute, dispense, and possess controlled substances]." [Doc. 23-1 at 4]. The warrant then went on to describe eleven categories of what such "evidence, fruits, and instrumentalities" might be, including business records and computers. [Id. at 4–10].

With respect to any challenge to probable cause, it is evident from the face of the application that Special Agent Kriplean's affidavit presented probable cause to believe that evidence of the specified crimes would be found at the various Hi-Tech locations. The evidence presented in the affidavit established probable cause to believe that Defendants manufactured, labeled, marked, and distributed at least four different supplements that contained non-dietary and/or controlled ingredients that were not properly declared on the label, and that this practice occurred over a significant period of time. While it was not a certainty that such evidence would be discovered, it was probable that it would, and that is all that the law requires. The

facts presented regarding the test results from the two purchases of the various products supported the magistrate judge's decision to issue the warrants because the totality of the circumstances allow a conclusion that there is a fair probability of finding other adulterated and/or misbranded products and/or contraband or evidence of the crimes noted in the affidavit. See United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). It is evident that in deciding whether to sign the Premises Warrants, Judge Vineyard followed the law, used a commonsense, practical approach, and correctly found that there was probable cause to believe that the requested searches would yield evidence of violations of law.

Defendant's assertion that the Premises Warrants were overbroad is without factual or legal support. The scope of the things to be seized is explicitly limited in multiple ways. First, the opening phrase of Attachment B to the warrants operates as a limitation, authorizing the seizure of "[e]vidence, fruits, and instrumentalities" of violations of federal law including violations of Title 21, United States Code, Sections 331 (FDCA violations) and 841(a) (controlled substance violations). Second, many of the categories contain additional limiting provisions. For example, Category 7, which authorizes the seizure of business records, includes two additional limitations. It provides for the seizure only of those business records "pertaining to the illegal purchase, possession, and/or unauthorized distribution of controlled

substances and introduction into interstate commerce any misbranded and/or adulterated foods and/or drugs." [Doc. 23-1 at 5–6]. In addition to that phrase, the business records category also provides: "The documents to be seized include those relating to the brokering, ordering, producing, purchasing, shipping, selling and distributing of misbranded and/or adulterated foods and/or drugs, including but not limited to . . . ." [Id.].

While it is true that the Premises Warrants are broadly worded and encompass many items and documents, warrants of such breadth have been upheld, especially in white-collar crime cases where a "paper puzzle" must be assembled "from a large number of seemingly innocuous pieces of individual evidence." United States v. Wuagneux, 683 F.2d 1343, 1349 (11th Cir. 1982). The investigation here had revealed that Hi-Tech was actively marketing and selling to the public at least four misbranded products containing a Schedule III substance for at least a year, and many items and documents could be relevant to (and evidence of) such conduct. It is reasonable for the Government to be interested in determining or verifying how pervasive the misconduct was and the level of danger to the public.

By explicitly limiting the scope of what could be seized to evidence of the crimes under investigation, the Premises Warrants were sufficiently particular to enable the searchers to reasonably ascertain and identify the documents and

information authorized to be seized.  See United States v. Wilson, No. 4:12-cr-0023-RLV-WEJ, 2012 WL 7992597, at \*15 (N.D. Ga. Nov. 28, 2012) (concluding that a search warrant was written with sufficient particularity because the items listed on the warrants were qualified by phrases that emphasized that the items sought were those related to the crime under investigation).  Due to the limitation on the things to be seized to only those things connected with the crimes under investigation, there is a sufficient nexus that satisfies the practical realities "that enable the searcher to ascertain and identify things authorized to be seized."  United States v. Smith, 918 F.2d 1501, 1507–08 (11th Cir. 1990) (approving similar language for documents pertaining to narcotics trafficking).

Under these circumstances, and giving the appropriate "great deference" to Judge Vineyard's decision to issue the Premises Warrants, I cannot say that the warrants were overbroad or that any of the categories of things to be seized were not supported by probable cause.  I conclude that the Premises Warrants provided sufficient particularity to guide the officers and satisfy the particularity requirements of the Fourth Amendment.  See Signature Pharmacy, Inc. v. Wright, 438 F. App'x 741, 745–46 (11th Cir. 2011) (per curiam) (unpublished) (holding that the items to be seized were described with sufficient particularity where the items were limited by the specific crimes under investigation and stating "[b]ecause the descriptions in

the warrants refer to items that are evidence of a violation of certain statutes relating to the sale of controlled substances, the items were described with sufficient particularity to allow Wright, a seasoned law enforcement officer, to identify the things to be seized").

### III.   CONCLUSION

For the reasons stated above, I **RECOMMEND** that Defendant's Motion for Joinder [Doc. 14] and Motion to Suppress Seized Electronic Equipment and Emails [Doc. 23] be **DENIED**.

**SO REPORTED AND RECOMMENDED**, this 2nd day of December, 2019.


CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE