IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| *v.* | 1:19-CR-0146-AT-CMS |
| CHOAT SOVIRAVONG | |

### United States Motion To Disqualify Bruce S. Harvey

The United States of America, by Theodore S. Hertzberg, United States Attorney, and Nathan P. Kitchens and Kelly K. Connors, Assistant United States Attorneys for the Northern District of Georgia, hereby moves to disqualify Bruce S. Harvey as counsel for defendant Choat Soviravong.

Before entering an appearance to represent Mr. Soviravong in this matter, Mr. Harvey represented his employer, Jared Wheat, the founder and CEO of Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), in connection with the government's investigation in this matter. Based on Mr. Harvey's brief prior representation of Mr. Soviravong in connection with the proffer that gave rise to the indictment in this case, this Court disqualified Mr. Harvey from representing Mr. Wheat, finding that "Soviravong's interests are directly opposed to Wheat's." *United States v. Wheat, et al.*, 1:17-CR-229-AT-CMS, (N.D. Ga. May 1, 2019) (Doc. 249 at 5) (hereinafter "Wheat Case"). The same is true now. Mr. Harvey's effort to

represent Mr. Soviravong after his disqualification poses significant conflicts of interest based on the irreconcilably divided loyalties owed to both Mr. Soviravong and Mr. Wheat, and the Court's independent interest in the fair, ethical administration of justice requires his disqualification.

## BACKGROUND

The Court is very familiar with Mr. Harvey's history of multiple representation in this matter, but the government will provide a refresher because this issue has not arisen in years.

In 2013, the government began investigating Hi-Tech for sending fraudulent FDA Certificates of Free Sales, GMP audit reports, and GMP certificates to prospective and current Hi-Tech customers. (Wheat Case Doc. 146 at 2–3). As part of that investigation, the government obtained documents that suggested Mr. Soviravong, who served as Hi-Tech's creative director and graphic designer with the technical expertise to design and prepare certificates, was involved in the creation of the fraudulent documents. (*Id.* at 3–4). For example, on at least one occasion, Mr. Soviravong sent Mr. Wheat an email attaching an unsigned, backdated GMP certificate purportedly on behalf of a company called PharmaTech. (*Id.*). On another occasion, Mr. Wheat sent Mr. Soviravong a third-party audit report from a company called NSF that did not certify Hi-Tech as

2

GMP-compliant, which appeared very similar in content and design to purported PharmaTech audit reports that were later sent to customers, except the categories deemed "Not Acceptable" were changed to "Acceptable." (*Id.* at 3–4).

In April 2014, Mr. Soviravong received a subpoena to testify before a federal grand jury in the investigation, and Mr. Harvey represented Mr. Soviravong in connection with the subpoena. (*Id.* at 4). Mr. Harvey arranged for Mr. Soviravong to participate in a voluntary interview with the government pursuant to a "use immunity" agreement in lieu of a grand jury appearance. (*Id.*) During the interview on June 24, 2014, Mr. Soviravong stated that he believed he was the only Hi-Tech employee who performed graphics design work. (*Id.*). But, with Mr. Harvey present, Mr. Soviravong allegedly made the four false statements at issue in this indictment: (1) he had never been asked to design a GMP certificate or certificate of any kind; (2) he did not prepare the GMP certificate shown to him during the interview; (3) he had never designed a Certificate of Free Sale; and (4) he had never heard of Glenn Godfrey. (Doc. 1 ¶¶ 8, 10, 12, 14).

In 2017, a federal grand jury indicted Mr. Wheat, Hi-Tech, and a Hi-Tech executive for conspiracy to commit wire fraud and wire fraud, among other counts. (Wheat Case Doc. 146 at 1–3). On October 23, 2017, Mr. Harvey entered a notice of appearance on behalf of Mr. Wheat. (*Id.* at 4–5). Less than a month later,

the government filed an initial notice of potential attorney conflicts, (*id.* at 5), and it filed a motion to disqualify Mr. Harvey on January 30, 2018 based on his prior representation of, and divided loyalties owed to, Mr. Soviravong. (Wheat Case Doc. 88). U.S. Magistrate Judge Catherine M. Salinas conducted a thorough Rule 44(c) hearing, during which Mr. Wheat and Mr. Soviravong indicated that they knowingly waived any objection to Mr. Harvey's conflict of interest arising from his prior representation of Mr. Soviravong. (Wheat Case Doc. 146 at 6–8).

On May 17, 2018, Judge Salinas issued a recommendation that Mr. Harvey be disqualified from representing Mr. Wheat. (*Id.* at 19). Judge Salinas noted Mr. Harvey's concession that the representation of Mr. Wheat was "obviously substantially related" to the prior representation of Mr. Soviravong and that he had "received relevant confidential information" through the prior representation. (*Id.* at 15). Judge Salinas thus concluded that because of the serious potential for conflict, disqualification was necessary, despite the conflict waivers, to protect the integrity and fairness of the trial. (*Id.* at 19).

On May 1, 2019, this Court entered an order adopting the Report and Recommendation to disqualify Mr. Harvey. (Wheat Case Doc. 249 at 5). The Court noted Mr. Soviravong's indictment in this matter and held that "Soviravong now has a very clear interest in cooperating with the Government to

lessen any potential penalty he may receive." (*Id.*). The Court concluded, "[i]n this Court's opinion, the potential conflict has now become an actual one because Soviravong's interests are directly opposed to Wheat's, and this Court now has full authority to decline to give effect to Wheat's waiver of that conflict." (*Id*). Mr. Harvey represented Mr. Wheat as co-counsel for approximately eighteen months before his disqualification.

On April 16, 2019, a federal grand jury indicted Mr. Soviravong of four counts of false statements, and Bob Citronberg entered a notice of appearance on his behalf the next day. (Docs. 1, 4). Mr. Citronberg passed away in March 2022, and Mr. Harvey entered a substitution of counsel form to represent Mr. Soviravong shortly thereafter. (Doc. 57). The government raised with Mr. Harvey its concern about his conflict of interest, particularly if Mr. Wheat or Hi-Tech were paying his legal fees to represent Mr. Soviravong, and the parties discussed this issue during a scheduling teleconference with the Court on December 16, 2022. (Doc. 58). During that scheduling teleconference, Mr. Harvey requested additional time to examine the conflict issue, which the Court granted. Following the completion of Mr. Harvey's representation of a defendant in a lengthy criminal trial in Fulton County that took more than two years, the Court held a status teleconference on May 27, 2025. (Doc. 63). The parties agreed that the conflict

issue had not been resolved, although Mr. Harvey did not deny that Mr. Wheat and Hi-Tech were paying his legal fees in this matter, and the Court ordered the government to file a motion to disqualify.

## ARGUMENT

**1. The Court's interest in ensuring the ethical administration of justice overcomes the Sixth Amendment right to counsel of choice.**

Although a "criminal defendant has a presumptive right to counsel of choice," *United States v. Ross*, 33 F.3d 1507, 1522 (11th Cir. 1994), "a defendant's right to the counsel of his choice is not absolute." *United States v. Campbell*, 491 F.3d 1306, 1310 (11th Cir. 2007). The Supreme Court has recognized that "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States,* 486 U.S. 153, 159, 108 S. Ct. 1692, 1697 (1988). Accordingly, while the Court "must recognize a presumption in favor of petitioner's counsel of choice, . . . that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Id.* at 164; *see also Ross*, 33 F.3d at 1523 ("[E]ven a potential conflict suffices for disqualification.").

The determination of whether an actual or potential conflict of interest exists is "left primarily to the informed judgment of the trial court." *Wheat*, 486 U.S. at 164. The Supreme Court has recognized the inherent difficulty of this determination that must take place "in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." *Id.* at 162–63. A defense counsel's ability to recognize the risk of a conflict is complicated by the fact that it is "rare" for a defense counsel "to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand." *Id.* A client's waiver of conflict-free representation also may be suspect because the "imponderables" that may arise in trial "are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics." *Id.* at 163.

Accordingly, the Eleventh Circuit recognizes that "[t]he need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest." *Ross*, 33 F.3d at 1523; *see also Wheat*, 486 U.S. at 160 ("Not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be

jeopardized by unregulated multiple representation."). That is precisely the case here.

**2. Mr. Harvey's actual conflict from his prior representation of co-conspirator Wheat, and Mr. Wheat's apparent payment of Mr. Harvey's legal fees in this matter following his initial disqualification, requires disqualification here as well.**

Mr. Harvey's effort to represent one co-conspirator, Mr. Soviravong, after previously being disqualified from representing another co-conspirator with adverse interests, Mr. Wheat, presents an actual conflict of interest that again requires his disqualification. Even if all parties waived this conflict, the Court's independent interest in ensuring the integrity and fairness of the judicial system requires the refusal of any waivers when confronted with successive representation of co-conspirators whose "interests are directly opposed" in the same matter, particularly when it appears that one co-conspirator is paying legal fees for counsel's representation of the other co-conspirator. (Wheat Case Doc. 249 at 5); *see Wheat*, 486 U.S. at 164; *Ross*, 33 F.3d at 1524.

**a. Mr. Harvey's representation of Mr. Soviravong involves the identical matter for which he previously represented Mr. Wheat, and this Court has previously found that their interests are directly adverse in that matter.**

The Georgia Rules of Professional Conduct provide that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another

person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Ga. R. Prof. Conduct 1.9(a). The Rule notes that even after "termination of a client-lawyer relationship, a lawyer has certain continuing duties with respect to confidentiality and conflicts of interest." Ga. R. Prof. Conduct 1.9 cmt. 1. Although a conflict can be waived in certain circumstances with informed consent, "[c]lient informed consent is not permissible if the representation (1) is prohibited by law or these rules . . . or (3) involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients." Ga. R. Prof. Conduct 1.7(c). "Loyalty to a client is impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other competing responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client." Ga. R. Prof. Conduct 1.7 cmt. 2. "The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant." Ga. R. Prof. Conduct 1.7 cmt. 7.

Consistent with Georgia Rule 1.9(a), "this Circuit has repeatedly held that successive representation may also give rise to an actual conflict." *United States v. Culp*, 934 F. Supp. 394, 397 (M.D. Fla. 1996) (collecting cases). The Eleventh Circuit considers two factors in determining whether counsel's prior representation of a client poses a disqualifying actual conflict: whether (1) the prior representation "'was substantially and particularly related to counsel's later representation'" and (2) "'counsel actually learned particular confidential information during the prior representation'" relevant to the later case. *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (quoting *Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987)); *see also Ross*, 33 F.3d at 1523 (instructing courts weighing whether disqualification is warranted to "examine whether the subject matter of the first representation is substantially related to that of the second," in order to determine whether defense counsel has "divided loyalties that prevent him from effectively representing the defendant").

Here, as Judge Salinas found, "there is no question that the subject matter of Mr. Harvey's . . . representation of [Mr. Wheat] involved 'substantially related' if not identical matters for which he is now representing [Mr. Soviravong]." (Wheat Case Doc. 146 at 17). Indeed, Mr. Harvey previously conceded that his representation of Mr. Soviravong was "obviously substantially related" to his

10

representation of Mr. Wheat. (Wheat Case Doc. 120 at 19). This concession and the Court's prior findings establish the first factor for an actual conflict with the successive representation here. *Freund*, 165 F.3d at 859.

The same holds true regarding the second factor—Mr. Harvey's possession of confidential information from Mr. Wheat. The Eleventh Circuit "irrebutably presume[s]" that defense counsel possesses "relevant confidential information" arising from counsel's prior representation. *See United States v. Henry*, 307 F. App'x 331, 335 (11th Cir. 2009); *see also United States v. Kitchin*, 592 F.2d 900, 904 (5th Cir. 1979) (noting that the former client "need not prove that [defense counsel] actually obtained confidential information nor that he has or will disclose it to his present employer");[1] *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1346 (5th Cir. 1981) (applying irrebuttable presumption "that confidential information has been given to the attorney actually doing work for the client"). This irrebuttable presumption applies because courts cannot take evidence about the former client's confidential information and whether such information would be helpful on cross-examination without

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

vitiating the very confidences that defense counsel is obligated to protect. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d at 1347. Just as Mr. Harvey previously conceded that he "received relevant confidential information" during his short prior representation of Mr. Soviravong, (Wheat Case Doc. 120 at 19), there is little doubt that Mr. Harvey was exposed to privileged information and participated in privileged communications concerning the wire fraud conduct over the eighteen months that he represented Mr. Wheat before his disqualification.

In the Hi-Tech prosecution, this Court not only recognized that Mr. Harvey represented both Mr. Wheat and Mr. Soviravong in "substantially related," if not identical, matters, but also that "Soviravong now has a very clear interest in cooperating with the Government to lessen any potential penalty he may receive." (Wheat Case Doc. 249 at 5). Accordingly, the Court determined that Mr. Soviravong's "interests are directly opposed to Wheat's," expressed doubt "that it can any longer rely on [Mr. Soviravong's] waiver that was made prior to his indictment" because "his interests are also directly and substantially implicated," and declined the waivers. (*Id.*). Despite the Court's finding about the "inconsistent interests" between Mr. Wheat and Mr. Soviravong, *Smith*, 815 F.2d at 1405, Mr. Harvey jumped from Mr. Wheat's camp following his

disqualification to representing Mr. Soviravong. Simply stated, that did not resolve his conflict of interest. To the contrary, Mr. Harvey's return to representing Mr. Soviravong following his disqualification from representing Mr. Wheat further entangles the two clients with conflicting interests. Mr. Harvey cannot fulfill his duties of loyalty owed to his former client, Mr. Wheat, while vigorously fulfilling his duty to counsel Mr. Soviravong regarding his potential options, including what the Court recognized as his "very clear interest in cooperating with the Government." Accordingly, disqualification is proper.

### b. Mr. Wheat's and Hi-Tech's apparent payment of Mr. Harvey's fees for representing Mr. Soviravong poses an actual conflict.

To make matters worse, the apparent source of Mr. Harvey's compensation for representing Mr. Soviravong deepens Mr. Harvey's conflicting duties of loyalty. In response to repeated questions from the government regarding whether Mr. Wheat or Hi-Tech is paying for Mr. Harvey's representation of Mr. Soviravong, Mr. Harvey did not deny accepting such payments. Mr. Harvey's acceptance of payment from Mr. Wheat or Hi-Tech for his representation of Mr. Soviravong both poses an independent conflict of interest and, in combination with his successive representation of Mr. Wheat prior to his disqualification, presents a clear danger to the fairness and integrity of this case.

13

The Georgia Rules of Professional Conduct prohibit an attorney from accepting compensation from a third party unless the client gives informed consent and "there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship." Ga. R. Prof. Conduct 1.9(f). The Eleventh Circuit recognizes that "the payment of legal fees by a third party does not automatically rise to the level of a conflict of interest." *United States v. Tobon-Hernandez*, 845 F.2d 277, 281 (11th Cir. 1988) (denying claim of ineffective assistance of counsel on direct appeal when defendant offered no evidence of conflicting loyalties). But the Supreme Court in *Wood v. Georgia*, 450 U.S. 261 (1981) concluded that a co-conspirator paying the attorney fees for another co-conspirator poses a significant concern in criminal cases:

> Courts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise. One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest.

*Id.* at 268-69. Given the Court's prior finding that Mr. Soviravong's and Mr. Wheat's interests are "directly opposed," Mr. Wheat's and Hi-Tech's payment for Mr. Harvey's representation of Mr. Soviravong poses such a concern.

In *United States v. Mack*, the Middle District of Florida addressed an allegation that a portion of defense counsel's fees were "paid by associates of the illegal drug organization of which the defendant is a member." No. 8:09-CR-572-T-30TGW, 2010 WL 3385028, at *1, *6 (M.D. Fla. Aug. 26, 2010). The district court cited *Wood* and held that "[t]he impropriety, and the risk of conflict, created by the drug organization paying for the defendant's fees is clear." *Id.* at *6. The court concluded that defense counsel "lacks the independent judgment to render an unbiased opinion" of whether a plea offer "is in the defendant's best interests because [defense counsel's] loyalty is to the drug organization and its interest in dissuading the defendant from cooperating with the Government." *Id.* at *7. Accordingly, the court refused to accept any waiver of the conflict and disqualified defense counsel. *Id.* at *9.

Similarly, in *United States v. Stuckey*, 917 F.2d 1537 (11th Cir. 1990), a large drug trafficking syndicate paid for the representation of several drug couriers, an arrangement that the trial court observed "had a certain 'odor' about it." *Id.* at 1543. The Eleventh Circuit first noted that the "sixth amendment right to counsel does not give an accused the right to subvert the judicial process." *Id.* The Eleventh Circuit concluded that "[t]he inference is inescapable that the syndicate provided [defense] counsel because they wanted to 'control' them—to prevent

them from cooperating with the Government." *Id.* Accordingly, the Eleventh
Circuit affirmed the disqualification of defense counsel, reasoning that "[s]uch
control can be devastating to the rights of an accused; rather than getting credit
through a charge bargain . . . or a reduced sentence. . ., the accused stands mute
and takes all the blame." *Id.*; *see also United States v. Urutyan*, 564 F.3d 679, 681
(4th Cir. 2009) (affirming district court's reasoning for disqualification when
"continued representation by the attorney in question posed a serious potential
for conflict of interest" based in part on "the great likelihood that [the attorney]
was paid by a third party who is a member of the alleged criminal enterprise");
*United States v. King*, No. CV 4:19-CR-77, 2020 WL 5803528, at *7 (E.D. Va. Sept.
25, 2020) (finding that defense counsel's acceptance of partial payment of
attorney fees from co-conspirator "raises an actual present conflict and the
serious risk of more conflicts during trial as more evidence comes to light
because it is possible that defense counsel has been paid by a third party who has
interests which are potentially in conflict with those of his client").

The same is true here. Mr. Wheat's and Hi-Tech's payment for Mr. Harvey's
representation of Mr. Soviravong poses the risk of a more pernicious form of
"control" than the fee arrangement that triggered disqualification in *Stuckey*.
Such payments here come from Mr. Soviravong's employer, who Mr. Soviravong

16

depends upon for his livelihood, after that employer was previously represented by Mr. Harvey in a substantially related criminal matter. Criminal charges are pending against Mr. Wheat as the primary leader of the wire fraud scheme, and his interests in controlling the potential testimony and outcomes of alleged co-conspirators are at their apex. Mr. Soviravong is thus susceptible to control by Mr. Wheat, and this arrangement raises the very "danger" that the Supreme Court recognized in *Wood* that "the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest." 450 U.S. at 268-69. Accordingly, Mr. Harvey's acceptance of payment from Mr. Wheat and Hi-Tech creates an irreconcilable conflict of interest with Mr. Soviravong, and Mr. Harvey should be disqualified in this matter just as in the Wheat Case.

**3. The Court's institutional interests compel the refusal of any waivers of Mr. Harvey's actual conflict.**

When certain conflicts of interest do not present institutional concerns, the defendants may waive the conflict. Ga. R. Prof. Conduct 1.7(c). But the weight of such waivers is limited by the recognized difficulty faced by clients trying to anticipate and understand the potential ramifications of a conflict, and the Court

17

may refuse to accept a waiver when the conflict poses strong institutional concerns. *See Wheat*, 486 U.S. at 163–64 (affirming disqualification, despite waivers by all clients, when defense counsel's multiple representation created "ethical dilemma . . . from which one or the other of his clients would likely suffer"); *Ross*, 33 F.3d at 1523–24 (rejecting defendant's unconditional conflict waiver when defense counsel had "insurmountable conflict of interest problems" that "could have impeded the trial and undermined the integrity of the judicial system"). The seriousness of Mr. Harvey's actual conflict presents grave institutional concerns about the ethical administration of justice that cannot be waived.

Based on the difficulty in assessing conflicts, the district court has "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163. And "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver." *Id.* at 162.

The Court has the authority to decline such waivers because it has a duty to "protect its independent interest in ensuring that the integrity of the judicial

system is preserved and that trials are conducted within ethical standards." *Ross*, 33 F.3d at 1523; *see also Wheat*, 486 U.S. at 160 ("Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."). This independent interest arises in part from the "legitimate wish of district courts that their judgments remain intact on appeal." *Wheat*, 486 U.S. at 161–62 (citing cases entertaining ineffective assistance claims from defendants who waived the right to conflict-free counsel); *see also Ross*, 33 F.3d at 1524 (affirming disqualification when conflict "would have rendered the court's verdict suspect and [defendant's] assistance of counsel unethical and ineffective.").

When faced with a conflict of interest arising from a co-conspirator's payment of legal fees for another co-conspirator, the Eleventh Circuit has held in several cases that the conflict could not be waived because of the inherent risk posed to the integrity of the judicial system. *See, e.g.*, *Stuckey*, 917 F.2d at 1543 (affirming district court's "refus[al] to let appellant waive the conflict manifest in [counsel's] obvious allegiance to the Miami 'gentlemen' who hired him"); *United States v. Padilla-Martinez*, 762 F.2d 942, 949 (11th Cir. 1985) (affirming district court's refusal to accept conflict waivers and disqualifying Miami attorneys when they

were paid to represent all co-conspirators by undisclosed third party and it was

thus "unlikely that the defendants could make a knowing and intelligent

waiver").

In *Mack*, the district court examined at length the propriety of a "waiver of

conflict-free counsel" when defense counsel's fees were paid by co-conspirators

in a drug trafficking case and concluded that "a fair and just criminal law system

could not tolerate such a result." 2010 WL 3385028, at *8. The court reasoned that

the conflict arose not only from the third-party payment of the attorney's fees,

but also the fact that defense counsel was "advancing the organization's interest

over that of his putative client." *Id.* Moreover, the court found that defense

counsel was "untruthful" in denying knowledge of the source of his attorney's

fees. *Id.* Accordingly, the court determined that "even if the defendant was

willing to waive his right to conflict-free representation, in order to ensure that

these legal proceedings are conducted within the ethical standards of the

profession, and to preserve the integrity of the court," defense counsel was

disqualified. *Id.* at *9; *see also Urutyan*, 564 F.3d at 681 (concluding that attorney

fees paid by co-conspirator may discourage defendant from considering a plea

and thus "pose an unwaivable conflict of interest"); *King*, 2020 WL 5803528, at

*6–7 (disqualifying counsel paid by alleged co-conspirator from representing

defendant when co-conspirator employed defendant, finding that "this is not a conflict that Defendant can waive due to its present severity and potential for more serious conflicts").

Here, Mr. Harvey's conflict is more severe than any of these cases because he previously represented Mr. Wheat, who apparently is paying his legal fees to represent Mr. Soviravong after his disqualification in the Wheat Case. Mr. Harvey's entanglement with Mr. Wheat and Mr. Soviravong poses the "inherent danger" and "risk" that the Supreme Court recognized in *Wood*: that Mr. Soviravong may not receive conflict-free advice regarding potential actions adverse to Mr. Wheat. 450 U.S. at 268–69. Just as in *King*, the fact that Mr. Wheat both employs Mr. Soviravong and is a co-conspirator in the alleged wire fraud conduct in the Wheat Case "raises an actual present conflict" notable for its "present severity and potential for more serious conflicts." 2020 WL 5803528, at *7. Unlike *King*, where the court recognized only the potential for conflicting interests between the defendant and co-conspirator, this Court has already determined that Mr. "Soviravong's interests are directly opposed to Wheat's." (Wheat Case Doc. 249 at 5).

Mr. Harvey's prior representation of Mr. Wheat heightens both the danger to the integrity of the legal process and the appearance of impropriety from the

payment arrangement. Mr. Harvey's ongoing duty of loyalty owed to his former client, Mr. Wheat, and apparent acceptance of payment from Mr. Wheat to represent Mr. Soviravong render it impossible for him to vigorously protect the interests of his current client, Mr. Soviravong, whose interests are "directly opposed to Wheat's." Any conflict waiver by Mr. Soviravong would be suspect based on Mr. Wheat's leverage over him as his employer, co-conspirator, and apparent funder of his current legal representation. Accordingly, "the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized" by Mr. Harvey's representation regardless of any conflict waiver, and Mr. Harvey must be disqualified. *Wheat*, 486 U.S. at 160.

## <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that the Court disqualify Bruce S. Harvey as counsel for Defendant Soviravong.

Respectfully submitted,

THEODORE S. HERTZBERG
*United States Attorney*

/s/NATHAN P. KITCHENS
*Assistant United States Attorney*
Georgia Bar No. 263930

22

Nathan.Kitchens@usdoj.gov

/s/ KELLY K. CONNORS
     *Assistant United States Attorney*
Georgia Bar No. 504787
Kelly.Connors@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

September 2, 2025

/s/ NATHAN P. KITCHENS

NATHAN P. KITCHENS

*Assistant United States Attorney*